Cooke, J. (dissenting).
I am in substantial agreement with the analysis made in the scholarly and comprehensive dissent of Justice Margett at the Appellate Division which meets the issues presented by the majority opinion of that court. I disagree only with his view that it is the child who has been injured and that the husband may maintain a nonderivative cause of action identical to that of the wife. It is, however, to the more limited majority opinion of this court that the following remarks are directed.
Certain facts of life of the 1970’s must be recognized and accepted at the outset. One such fact is the legal right of a mother to abort a pregnancy (Roe v Wade, 410 US 113; Penal Law, § 125.05). Another is the development and application of *114 tests to identify carriers of Tay-Sachs disease and the occurrence of that disease in their yet unborn offspring.
Tay-Sachs, as noted by the majority, is a fatal progressive degenerative disease of the nervous system which primarily affects the Eastern European Jewish population and their progeny. Only in the circumstance where both parents are carriers will there be a great likelihood of the presence of the disease in the offspring. In 1969, a relatively simple test to reveal carriers was developed, requiring only a blood sample. Parents-to-be, if individually tested and found both to be carriers, could then agree to a second test. Such second test involved the drawing and testing of amniotic fluid from the sac in which the unborn child rests within the mother. With the information that their child would be born suffering from this fatal disease, parents could make an informed, although difficult, decision as to whether to continue or to terminate the pregnancy.
Believing that she might be pregnant, Mrs. Howard sought and received the continuing medical counsel of B. Douglas Lecher, M. D., a physician specializing in the field of obstetrics and gynecology. The physician-patient relationship there existing, like all others, was based upon the theory that the physician is learned, skilled and experienced in subjects of vital importance to the patient but about which the patient knows little or nothing. Great reliance, faith and confidence then are necessarily placed in the professional word, advice and acts of the physician (see 61 Am Jur 2d, Physicians and Surgeons, § 95 et seq.).
From such relationship a duty arises and flows from physician to patient. Put simply, that duty is to care for and advise the patient in accordance with proper medical practice. A physician, such as Dr. Lecher, has a duty to employ that degree of skill and knowledge which physicians similarly situated ordinarily possess, regard being had to the state of scientific knowledge at the time (see Physicians and Surgeons: Standard of Skill and Care Required of Specialist, Ann., 21 ALR3d 953). A breach of this duty would result in liability, the extent of which has been held to include recovery for all damages proximately caused by such breach whether such damages could or could not have been foreseen (Steitz v Gifford, 280 NY 15).
In her complaint, Mrs. Howard alleged existence of the doctor-patient relationship and detailed the duty that flowed *115 therefrom. She alleged a duty: to take a proper medical history; to know that she and her husband were of Eastern European background and potential carriers of Tay-Sachs disease; to know that there were tests available to determine whether she and her husband were carriers and to determine whether the fetus was a victim of such disease. Further, Mrs. Howard alleged a breach, asserting that defendant was careless and negligent in his treatment; that he failed to take a proper history or consider the history he had taken; that he failed to keep abreast of the times; that he failed to properly test; and that he failed to give proper advice and recommendations.
Had there been no breach of the duty and had the doctor advised Mrs. Howard that the fetus suffered from Tay-Sachs disease, it is alleged that the pregnancy would have been terminated through legal abortion procedures. Instead, on August 21, 1972, the defendant delivered of Mrs. Howard a female child, Melissa Howard, who suffered, and within two years died, from Tay-Sachs.
The complaint, as described, was structured so as to enumerate two causes of action. The second seeking "special damages”, sums expended by plaintiffs for medical care and funeral expenses for the infant, was originally unchallenged but has since, by stipulation, been discontinued. The first, seeking compensation for severe mental distress and emotional disturbance, was the target of a motion to dismiss.
The issue in this case is not, as the majority states (p 110), "whether the parents can recover * * * for the mental distress and emotional disturbances they suffered as a result of their infant daughter having been born with and eventually succumbing to Tay-Sachs disease”. Put simply, the question is whether a patient may recover for her physician’s negligence.
Since, today, there is no question that an injured party may recover both for the actual physical injury sustained and for the concomitant mental and emotional suffering which flow as a natural consequence of the wrongful act (Ferrara v Galluchio, 5 NY2d 16; Steitz v Gifford, 280 NY 15, supra) and, indeed, recover for psychic injuries even in the absence of physical impact (Battalla v State of New York, 10 NY2d 237), plaintiff, Laura Howard, should be permitted to pursue recovery on her cause of action.
While the majority recognizes the rule that (p 111) "there may be recovery for the emotional harm, even in the absence *116 of fear of potential physical injury, to one subjected directly to the negligence of another as long as the psychic injury was genuine, substantial, and proximately caused by defendant’s conduct (Johnson v State of New York, 37 NY2d 378, 383-384)” it fails to recognize how perfectly this case may fit within that rule.
As did the Appellate Division majority before it, the majority here seeks to place Mrs. Howard in the shoes of a bystander and deny her recovery for want of a direct injury. But unlike Tobin v Grossman (24 NY2d 609) upon which the court relies, it was the mother here to whom the defendant’s duty was owed.
Rather than liken this case to Tobin v Grossman, which case has no relevance to the facts alleged here, comparison can more aptly be made with Johnson v State of New York (37 NY2d 378, supra). In Johnson, the daughter of a hospital patient was permitted recovery for emotional harm sustained by her as a result of negligent misinformation given by the hospital that her mother had died. The negligently sent false message was the breach of a duty owed and the events flowing from its receipt were the proximate cause of claimant’s emotional harm. There, as here, the injury was inflicted directly upon the individual claiming the harm and the same individual to whom the duty was owed was the one directly injured by its breach. Logic, as well as justice, compelled the conclusion in Johnson, as it does here, that all proven harmful consequences proximately caused by the tortious act should be compensable.
On this, the correct analysis, no legitimate fear of extension to remote family members can be expressed, for only the patient herself is owed the physician’s duty and has suffered directly by its breach (cf. Tobin v Grossman, 24 NY2d 609, 615, supra). While Mr. Howard may suffer from emotional disturbance and mental distress similar to that of his wife, such suffering is not actionable for, not being a patient of Dr. Lecher, Mr. Howard stands outside the sphere of duty circumscribed in a malpractice action such as this. Like any spouse, however, he may be entitled to maintain derivatively a cause of action for loss of consortium.
The analogy propounded by the majority lends no support to its analysis. To infer that a mother is a bystander at the birth of her infant manifests a basic misunderstanding of the duty owed a patient by a physician. In such a circumstance as hypothesized, there are two within the zone of danger, and the *117 doctor owes a duty to each. That the infant may have suffered physical injury, while the mother solely psychic, is not to say that each, individually, could not seek redress against the physician for the particular type of damage he caused.
The day has not come when public policy has foreclosed the maintenance of malpractice actions. To be sure, as noted by two recent commentators "The Courts would be indulging in a dangerous precedent if they provide a blanket immunization for physicians in the case of their failure to advise parents of the prospects of giving birth to a deformed child. The burden on the medical profession in taking a genealogical history, administering simple effective tests to determine if there are defects in the fetus, and then informing the parents of such possible defects so that they can make an informed decision whether to conceive or continue with a pregnancy is not any more unreasonable than the burden placed upon physicians to use reasonable care in delivering a child or informing patients of the risks of surgical procedures.” (Birnbaum & Rheingold, Annual Survey—Torts, 28 Syracuse L Rev 525, 564.)
Accordingly, the order of the Appellate Division should be modified by reinstating the cause of action of plaintiff Laura V. Howard and, as so modified, affirmed.
Chief Judge Breitel and Judges Jasen and Gabrielli concur with Judge Wachtler; Judge Cooke dissents in part and votes to modify in a separate opinion in which Judges Jones and Fuchsberg concur.
Order affirmed, with costs.