OPINION OF THE COURT
J. Radley Herold, J.
The plaintiff, Burton Fendelman, has brought suit in the Small Claims Part of this court against the defendant, Conrail, for: “breach of a contract of carriage of plaintiff passenger during the month of July.” The plaintiff also claimed that the defendant “committed an aggravated tort against the person of the plaintiff wilfully and maliciously.” The plaintiff seeks damages in the amount of $1,500 together with interest and costs. This action was tried before the court[1] without a jury[2] on the evening of *303 January 27, 1983. The plaintiff, an attorney, chose to represent himself[3] at the trial of the action. The defendant Conrail was represented by counsel. The plaintiff testified in his own behalf and called as a witness one John Scherf of Scarsdale. The defendant called as a witness one Walter Zullig, Jr., of New York City. The court reserved decision and requested memoranda of fact and law from counsel.
The plaintiff testified that for the two-week period between July 26 and August 6, 1982 he traveled as a commuter from the Hartsdale Railroad Station[4] to Grand Central Terminal in New York City and returned during the week. His monthly commutation ticket during both July and August[5] cost $87.25. During this two-week period the complaints of the plaintiff included the following: lateness of the trains, an insufficient number of cars to accommodate the riders resulting in overcrowding and “standing room only”, lack of air conditioning and electricity, dirty toilets, noxious odors and lack of water facilities. The plaintiff as to these complaints had contemporaneously made a diary. On cross-examination the plaintiff stated *304 that these “atrocious conditions” had existed for years and that he has been continuously dissatisfied. He has tried other modes of transportation, e.g., car pooling and a bus but cannot read or write on them and has become ill. The plaintiff also testified that he does do some work on the train. He contends that the contract which has been breached by the defendant is an implied contract to transport him from one point to another in a safe and comfortable manner. As to the claim of aggravated tort the plaintiff testified[6] that this was the apprehension he nad as to the future lack of performance by the defendant based upon past lack of performance. The defendant sustained no loss of business and no physical injury as the result of the actions or inactions of the defendant.
John Scherf testified that he is employed in Manhattan and takes the train of the defendant to Manhattan from the Scarsdale station. He described an occasion on January 27, 1982 where the train was unbearably crowded, where the train would proceed and then stop without explanation and during which time a passenger became ill. When that occurred requests were made to and ignored by the conductor. Mr. Scherf later testified at a hearing in Connection with this incident but has never been given a reason as to why the conductor acted as he did on the train.
The plaintiff asks for the maximum allowable on damages as to the aggravated tort in which he alleges that the defendant disregarded his health and safety and for a refund of his commutation ticket payment for the breach of contract of carriage.
Mr. Walter Zullig, Jr., testified that he is general counsel and corporate secretary of Metro-North and was such since January 1,1983. Prior to that he held positions in the legal department (and other departments) with the Metropolitan Transportation Authority. Through his testimony it was indicated that Metro-North was a subsidiary of the Metropolitan Transportation Authority and that under *305 section 1264 of the Public Authorities Law the Metropolitan Transportation Authority was performing a governmental function. The function of the Metropolitan Transportation Authority was said to be to promote and improve the service of the railroads. The Metropolitan Transportation Authority entered into a service agreement with the Harlem-Hudson Line and with the trustees of the bankrupt Penn Central Railroad. Penn Central operated the railroad under its contract with the Metropolitan Transportation Authority until March 31, 1976 when the assets of Penn Central were transferred to the defendant Conrail. The defendant has operated the railroad through 1982 and it is contended that Conrail had the same subsidiary relationship with the Metropolitan Transportation Authority that Metro-North supposedly now has. There was introduced into evidence various documents and agreements including a copy of a train ticket (with a disclaimer of responsibility on the rear) and a passenger tariff indicating the conditions of passage. It was further testified to that a substantial percentage of the cost of service to a commuter is subsidized by the State and Federal (and in some instances county) governments.
Some general comments should first be made before any discussion of the points urged by counsel and the applicable law is discussed. This action although brought in the Small Claims Part of the court occupied many hours of court time not only as to the trial itself but also as to the review of the memoranda of law, research and the writing of a decision. This, of course, is the proper function of any court. But the public perception of a Small Claims Court is entirely different — and understandably so. This case held some measure of importance in the public eye and the legal issues involved are important enough to justify the amount of time spent by all concerned. The average small claims matter, however, lasts only a short period of time (perhaps a half hour or less) and is immediately decided from the Bench more often than not. Future small claims litigants should not, therefore, be deterred from bringing such claims by the appearance and actuality of complexity which this case obviously had.
*306 The defendant argues that the claim must be dismissed as the plaintiff is not the real party at interest but rather part of an association of individuals known as “Trainwatch 82”. UJCA 1809 provides that no action may be instituted in a Small Claims Part of a Justice Court by a corporation (other than a municipal corporation), public benefit corporation, school district, partnership, association or an assignee of a small claim. The defendant was given the opportunity at the trial to pursue this area but failed to adequately do so. The uncontradicted testimony of the plaintiff was that he was not a member of “Trainwatch 82”. It clearly appears that this suit was brought in the individual name of the plaintiff for an alleged wrong or wrongs done to him as an individual and not to him as a representative of any association. Therefore, the evidence before this court compels the court to hold that the plaintiff was and is a proper party to initiate this action and the application of the defendant for a dismissal upon that ground is denied.[7]
The defendant further urges that it is immune from suit under a theory of governmental immunity arrived at through its contractual arrangements with the Metropolitan Transportation Authority and the interpretation of various statutory provisions. The defendant in support of its theory called Mr. Zullig as a witness and his testimony has been substantially set forth above. It is on the basis of that testimony, a reading of the statutes cited and of the various agreements and documents in evidence that the defendant urges that this court conclude it has governmental immunity and is immune from the lawsuits brought here.
The Metropolitan Transportation Authority was created by an act of the New York State Legislature in 1965 and constituted a public benefit corporation. It was legislatively declared that the purposes of the authority shall be the continuance, further development and improvement of commuter transportation and other related services. It was further legislatively found and declared that the authority shall be regarded as performing an essential governmental *307 function in carrying out its purposes (Public Authorities Law, § 1264).
The defendant argues that subdivision 8 of section 1266 of the Public Authorities Law together with the various agreements and documents in evidence immunizes it from suit. A careful reading of that subdivision, in the judgment of this court, limits any such application of immunity — if immunity exists at all — to the authority itself and does not extend it to the persons or entities with which it may deal. If the Legislature had wanted to extend the claimed “immunity” beyond the authority it would and could have done so. It did not and that interpretation cannot be engrafted upon the statute by judicial fiat. Once having said that, it is clear to this court that the provisions of the New York State Transportation Law dealing with common carriers are applicable to and binding upon the defendant. Nothing in the various agreements and documents in evidence persuades this court to the contrary. Even more significant is the fact that this claim is against Conrail and not against the Metropolitan Transportation Authority. The status of Conrail itself was set forth in its own enabling legislation. Conrail is a for-profit corporation and shall not be an agency or instrumentality of the Federal Government (US Code, tit 45, § 741, subd [b]). Finally, nowhere in any State provision is it said that Conrail is to be an instrumentality or agency of the State of New York.
Reliance is placed by the defendant upon the decision in Leeds v Metropolitan Transp. Auth. (117 Misc 2d 329) in support of its contention that governmental immunity bars the suits brought here. The Leeds decision is factually distinguishable and, therefore, not controlling as to the matter before this court. It involved a suit against the Metropolitan Transportation Authority and the New York City Transit Authority directly. Both authorities are public benefit corporations and are statutorily said to be performing governmental functions (Public Authorities Law, §§ 1202, 1264). Conrail is neither a public benefit corporation nor an entity statutorily said to be performing a governmental function. The court, therefore, declines to follow the Leeds decision[8] and holds that the defendant *308 cannot defeat the causes of action in suit here by a claim of governmental immunity.
The second cause of action by the plaintiff is for aggravated tort in that the defendant willfully and maliciously caused him apprehension. The gist of the plaintiff’s trial testimony was that the apprehension was a result of the past lack of performance in proper service by the defendant and in anticipation of its continuation. No physical injury and no loss of income came as a result. The testimony was that of the plaintiff alone[9] and no evidence was produced of a medical, psychological or psychiatric nature. The terminology “aggravated tort” was amended in the posttrial memorandum of law to be “emotional distress” apparently in order to hopefully fall under a series of decisions dealing with such a cause of action. But it is of no significance what the cause of action is denominated since courts have held themselves reluctant to permit recovery for even negligently caused psychological trauma with ensuing harm in the absence of contemporaneous or consequential physical injury (Johnson v State of New York, 37 NY2d 378). Furthermore, in the present complaint the allegation is that Conrail caused the “aggravated tort” or “emotional distress” willfully and maliciously. There is no evidence in the record as to a willful or malicious action on the part of the defendant toward this plaintiff or any contemporaneous or consequential physical injury sustained by the plaintiff. Therefore, the cause of action for aggravated tort (or emotional distress) must be and is dismissed by this court.
The first cause of action urged by the plaintiff is for a breach of contract of carriage during the period of July 26 to August 6, 1982. The plaintiff contends an implied contract of passage with the defendant once the monthly commutation ticket has been purchased. The “breach” is alleged by the litany of complaints set forth above. The plaintiff brings this action as an individual to express his continued dissatisfaction with the “atrocious conditions” *309 he finds himself exposed to on his daily travel to and from work in New York City. He brings this action to hopefully send the message of a citizen to the defendant and those responsible for its direction and management to take the necessary steps to correct obvious and serious deficiencies in their operation and insensitivities of some of their employees. The plaintiff has chosen the Small Claims Part of this court as the vehicle for his protest and for his relief. In terms of protest he has already succeeded by the filing of the claim and the conduct of the trial no matter what the ultimate decision of the court may be. This court is mandated to perform substantial justice between the parties according to the principles of substantive law. Its procedures may be and have been informal but it must at all times adhere to the substantive law.
The transportation of the plaintiff was all within the confines of the State of New York. Conrail by Federal legislation has been deemed a common carrier by railroad and is subject to State law in the absence of any statute to the contrary (US Code, tit 45, § 741, subd [b]). This court has already held that the defendant is subject to the provisions of the New York State Transportation Law dealing with common carriers. Section 96 of that law provides that every common carrier performing a service in the transportation of passengers from one point to another in New York State must furnish such service and facilities as shall be safe and adequate and in all respects just and reasonable. These requirements of the statute are declarative of the common law (Murphy v New York Cent. R.R. Co., 225 NY 548; Matter of Dry Dock, East Broadway & Battery R.R. Co., 254 NY 305; see, also, Railroad Law, § 54; Transportation Law, § 95). Furthermore, section 111 of the Transportation Law provides that a person sustaining loss, damage or injury caused by or resulting from the failure of a common carrier to do that which is required by law may bring an action for recovery of such loss, damage or injury in any court of competent jurisdiction. These statutes and the basic common law, therefore, define the duty of the defendant to the plaintiff.
The defendant contends that the train ticket and the tariff relieve it of legal responsibility to the plaintiff. The *310 law may bring an action for recovery of such loss, damage or injury in any court of competent jurisdiction. These statutes and the basic common law, therefore, define the duty of the defendant to the plaintiff.
The defendant contends that the train ticket and the tariff relieve it of legal responsibility to the plaintiff. The train ticket contains a disclaimer of any assurance of a seat on a particular train and that the defendant does not assume responsibility for inconvenience, expense or damage resulting from errors in timetables, delayed trains or for changes in, or shortages of equipment. The tariff states substantially the same and additionally disclaims liability for canceled trains and failure to make connections. The court notes that no objection at the trial was taken in regard to the size of the print on the ticket or tariff. Considerable colloquy, however, did take place between counsel on that subject and the posttrial memorandum of the plaintiff dealt with it. In view of the decision of this court no further comment or ruling is required on that point.
Whether one adopts the position — which this court does — that the disclaimers and tariff provisions are contrary to the public policy of the State of New York to the extent that they contravene the intent of that policy (Transportation Law, §§ 95, 96, 111; Becker v Conrail, Westchester LJ, March 7, 1983, New Rochelle City Ct, Marcus, J.) or that the disclaimers do not include every condition[10] complained of by a plaintiff (Dominianni v Consolidated Rail Corp., 110 Misc 2d 929) the defendant has nonetheless failed to meet the required standard of performance mandated of a common carrier.
To hold with the defendant that the only obligation of it is to deliver a commuter from one point to another without more defies all common sense. This court holds on the basis of statutory mandate[11] that the defendant has the legal *311 obligation to its passengers to transport them in facilities which shall be safe and adequate and in all respects just and reasonable. To the extent that any tariffs or disclaimers contravene that legal obligation those tariffs and disclaimers are found to be against the public policy of the State of New York. The court, therefore, finds that the defendant Conrail is legally responsible to the plaintiff for the violation of its duty in the standard of performance owed to him.
The court will now address one of the more troublesome aspects of this matter: the question of damages. The plaintiff has the obligation, under substantive law, to supply evidence as to the extent of the damages he seeks. The plaintiff here seeks a refund of the moneys paid for his commutation ticket to the extent of the two weeks complained of.
The plaintiff, despite the violation of the standard of performance by the defendant, did obtain transportation to and from his place of business. “To receive a full refund after receiving a portion of the consideration, without more, would be unjust.” (Kessel v Long Is. R.R. Co., 107 Misc 2d 1067.) The plaintiff sustained no physical injury or loss of income. No evidence was submitted of any medical, psychological or psychiatric condition resulting from the acts complained of. The plaintiff tried alternative means of transportation (car pooling and a bus) and found it wanting as he became ill and could not do any of his work while en route. A reasonable inference may be made that on the occasions when the “atrocious conditions” did not exist on the train of the defendant the plaintiff was able to work without becoming ill. There was no evidence adduced that the plaintiff became ill on the train whether while working or merely as a passenger.
The court may only award damages by not engaging in speculation. To engage in speculation would mean the *312 improper use of conjecture in the absence of evidence (R & I Electronics v Neuman, 66 AD2d 836). Damages will be awarded as long as they are not uncertain, contingent or conjectural and even where the amount cannot be determined with absolute certainty (Wakeman v Wheeler & Wilson Mfg. Co., 101 NY 205). There must, however, be some basis of computation in the evidence for determining the amount of the damages. And that basis must be supplied by the plaintiff (Kessel v Long Is R.R. Co., supra).
The court has reviewed the testimony at the trial as well as the posttrial memoranda of law submitted by counsel. And in so doing the court has read the decisions relied upon by the plaintiff and most particularly those of Park West Mgt. v Mitchell (47 NY2d 316), Dominianni v Consolidated Rail Corp. (supra), and Javeline v Long Is. R. R. (106 Misec 2d 814; see, also, Kessel v Long Is. R.R. Co., supra, and Becker v Conrail, supra). The court notes that in Dominianni, Javeline, and Becker a certain percentage of the cost of the commutation ticket was awarded as damages. As sympathetic as the court is to the contention of the plaintiff it seems that such a determination by a certain percentage of refund — in the absence of some evidence — is engaging in improper speculation and in no way approaches a reasonable degree of certainty in the ascertainment of damages. Since the substantive law of damages prohibits speculation and conjecture this court cannot allow such a basis of computation of damages to be used. This does not mean that the plaintiff did not sustain any damages but only that they have not been proven to the satisfaction of the court under what it understands are the binding principles of substantive law.
In conclusion the object of the protest by the plaintiff has been accomplished under the evidence and the applicable substantive law. It must be further stated that the relief a harried commuter justifiably seeks may not always be measured in terms of monetary amounts. Consequently the relief sought in this action by the plaintiff may not always be available in a Small Claims Part of a Justice Court. Although the Small Claims Court should not be bypassed by the commuter where he or she feels it appropriate, the commuter seeking more relief or relief of *313 another nature should seriously consider an action in a Supreme Court of this State or a Federal District Court where the remedies available are far more expansive. The commuter correctly wants better service. Unfortunately, this court does not have the authority to sign an order directing it. Lastly, in the event that either party feels that substantial justice has not been accorded them in any fashion in this suit they are encouraged to file an appeal with the Appellate Term. The sole guiding principle of this court is to do what it perceives as the right thing in a given set of circumstances before it without regard to any other influences. The court believes it has done so but does not shy away from review by an appellate forum and any guidance for future litigation.
It is, therefore, the decision of this court that the plaintiff be awarded judgment for nominal damages in the amount of $1[12] plus costs and interest from August 6, 1982.

. This court as the acting Village Justice has no authority to unilaterally determine when it will preside. By virtue of section 3-301 of the New York State Village Law an acting Village Justice shall serve when requested by the Village Justice or in the absence or inability of the Village Justice to serve. The court in this instance was requested to serve by the Village Justice for the reasons stated in the trial record.

. No reasons appeared to justify this court in transferring the matter to the regular part of this court and thereby out of the Small Claims Part. Had such been done the plaintiff would have had the right to demand a trial by jury. In the absence of such a *303 transfer the plaintiff is deemed to have waived a trial by jury. No demand for a transfer and a jury trial was made by the plaintiff.

. The initial claim for breach of contract of carriage and aggravated tort was filed by Paul Feiner, Esq., on behalf of the plaintiff. Mr. Feiner later acted as counsel to the plaintiff in a communication with the court. At the trial itself and at a prior court appearance the plaintiff chose to represent himself. Mr. Feiner was among the spectators in the courtroom during the trial.

. The Hartsdale Railroad Station is in the unincorporated area of the Town of Greenburgh and is not in the Village of Scarsdale (the boundaries of which are coterminus with those of the Town of Scarsdale and which at no point are within the Town of Greenburgh). The plaintiff resides in the Village of Scarsdale and purchased his monthly tickets by mail from his law office in New York City. The train upon which he traveled goes through the Village of Scarsdale. The court takes judicial notice that there is and was a station in the Village of Scarsdale and that there is an agent there for the purpose of selling tickets for passage on the train. The claim in this case was served on the ticket agent in Scarsdale by mail. No objection was made to the jurisdiction of the court over this matter. The jurisdiction of the Small Claims Court as to the rendering or enforcement of money judgments is based upon, among other things, a defendant having an office for the transaction of business within the municipality where the court is located. (UJCA 1801.)

. The original claim set forth the month of July, 1982 as the period of the contract. The testimony, to which no objection was made, set forth the last week of July and the first week of August, 1982 as the period of the contract. Even if there had been objection this court would have overruled it as a Small Claims Court is not bound by statutory provisions or rules of practice, procedure, pleading or evidence. The court is mandated, however, to “do substantial justice between the parties according to the rules of substantive law” (UJCA 1804).

. But for the intervention of the court there would have been little, if any, factual reference in the trial record as to the basis of the claim of “aggravated tort”. The court, as a result, made inquiry on its own, where appropriate, of the witnesses. The court advised counsel that where they felt it necessary they should state any objection to the inquiries by the court. The court recalls no objections being made by either party.

. This ruling is dispositive of the motion (in the'form of a letter) for summary judgment submitted by counsel to the defendant prior to the commencement of the trial.

. This court would be bound by a holding in the Appellate Term, Second Judicial Department, in an action against Conrail on similar grounds where governmental *308 immunity had been held to bar suit. No sucli decision in the Second Department has been cited by counsel nor found in the research done by the court.

. The testimony of Mr. Scherf, although descriptive of similar conditions as described by the plaintiff as well as the unforgivable conduct of a conductor, does not provide any relevant evidence as to the claim by the plaintiff here which is a personal claim and not one on behalf of a class of individuals.

. Filthy toilet facilities, noxious odors and the absence of lights and air conditioning are but a few of the examples of conduct not necessarily within the disclaimer or tariff.

. Since this court is primarily basing its decision on what it construes as a statutory mandate it need not reach the question of whether the claim of an implied contract — which the court does find existed under the peculiar facts and circumstances of this case *311 — could be defeated by the principles of ratification or waiver. These principles would in no way, in the judgment of the court, defeat an action based on a violation of the statutory mandate. Since this court is not bound by the statutory provisions or rules of pleading, practice or procedure it is consistent with the principle of substantial justice being accorded to the parties that it consider in the light of the evidence alternative theories of liability. In so doing the court has considered the position of opposite counsel with regard to the applicability or inapplicability of the Transportation Law to the defendant.

. Under section 111 of the Transportation Law a willful violation of the statute provides for the court, in addition to damages otherwise found, to fix a reasonable counsel fee. As earlier stated there was no evidence under any theory of liability to indicate that the defendant acted willfully or maliciously toward the plaintiff. The Nassau County District Court in the Kessel decision (107 Misc 2d 1067) awarded nominal damages. The Harrison Town Justice Court in the Dominianni decision (110 Misc 2d 929) and the New Rochelle City Court in the Becker• decision (Westchester LJ, March 7, 1983, New Rochelle City Ct. Marcus, J.) awarded damages based upon 10r/c of the commutation cost for the period in question. The court in Dominianni made reference to the Court of Appeals decision in Park West Mgt. v Mitchell (47 NY2d 316) in which damages set at 10(/i by the trial court were affirmed on appeal. In the Park West Mgt. case there was a factual substantiation in the trial court to justify the use of that figure. Such a factual foundation is absent in this case. The cost of the ticket to the plaintiff was $87.25 per month. The period in dispute is from July 26 through August 6, 1982. Under the assumption of use only from Monday through Friday it would involve 10 days of travel at a cost of $39.70. If the 10'J “rule” were used in determining the damages the recovery to the plaintiff, in the absence of punitive damages (which this court does not find in the evidence), would be $3.97.