OPINION OF THE COURT
Frank S. Rossetti, J.
The instant motion is for permission to file a claim out of time. It arises from the erroneous notification by a State mental hospital of the “death” of George Jenkins, the son of claimants Marion and Agnes Jenkins and the brother of the other claimants. The damages claimed include not only the personal suffering of each claimant, but also funeral and other expenses incurred in shipping the body (of another man as it turned out) to the said mother’s home in Louisiana. The proposed claim is grounded in negligence and accrued at the earliest on February 5, 1980, when claimant Edward Jenkins was notified by a doctor of Manhattan Psychiatric Center that George Jenkins had died while a patient there.[1] Actually, George Jenkins did not die, but another patient who used the same name as an *145 alias did. The hospital mistakenly referred to George Jenkins’ file when the other patient died and notified the claimant brother as aforesaid.
We observe initially that this motion, received by the State January 31,1983, was timely made within the applicable three-year period after accrual since the earliest possible accrual date was the aforesaid February 5, 1980 date. (See Court of Claims Act, § 10, subd 6; CPLR 214, subd 5; 307, 2211.) The court thus acquired jurisdiction of the motion at said time of service (see Matteo v State of New York, 203 Misc 523, 524-525; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C2211:4) and may grant permission to file a claim subsequent to said three-year period, the permission and filing being deemed as of the date of service (see Thompson v State of New York, 258 App Div 758).
Considering the requisite factors on this application (see Court of Claims Act, § 10, subd 6), we first find that claimants have failed to demonstrate that the delay in filing a notice of intention or claim was excusable. The excuses raised were that claimants were nonresidents, widely dispersed (claimant Agnes Jenkins lives in Louisiana and the other claimants in Oakland and San Francisco, California), one (Marion Jenkins) was an incompetent and all were unfamiliar with New York law. Appellate law has found the first and last said excuses not reasonable ones. (See, e.g., La Bar Truck Rental v State of New York, 52 AD2d 1007.) As to claimants’ dispersion, they must have discovered the subject error (i.e., when it was confirmed George Jenkins was in fact still alive) before February 26,1980, since that was the date the State wrote Agnes Jenkins apologizing for the mistake. [2] Thus they had about 70 days in which to timely file a notice of intention or claim. We find this to have been enough time notwithstanding their separation. As to the father’s incom *146 potency, we find that irrelevant on the issue of excuse since he could not legally have filed a notice of intention or claim in any event. (See CPLR 1201.)
Turning to the other five factors, however (see Court of Claims Act, § 10, subd 6), we find them favorable to claimants’ application. The noted February 26, 1980 letter from the State irrefutably establishes notice and an opportunity to investigate. Said letter also appears to indicate the merit of the claim, a claim specifically approved by New York’s highest court. (See Johnson v State of New York, 37 NY2d 378.) The defendant raises the absence of medical affidavits establishing causality as grounds for finding no merit, but its reliance on Goldstein v State of New York, (75 AD2d 613), is misplaced.[3] To quote Johnson v State of New York (supra, p 382) there is “ ‘an especial likelihood of genuine and serious mental distress, arising from the special circumstances’ ”. We think the facts at hand are clearly the type of unordinary situation where it is readily apparent to a layman that some emotional distress would be caused to claimants by the subject events. (Cf., e.g., Monahan v Weichert, 82 AD2d 102, 107.) The nature and extent of such distress may require medical evidence, but that goes to the amount of claimants’ damages, not their existence. The amount of damages is a matter for proof at trial, not here. On this application, we believe it sufficient that there be a showing of the existence of mental distress, whatever its extent, proximately caused by the alleged negligence. Such is properly evidenced by the “special circumstances” at bar. To find otherwise would deny common human experience. It is also noted that two of the claimants incurred the said funeral and other expenses in addition to personal suffering damages. Therefore, we find the claim has the appearance of merit.
We observe with respect to merit that claimant Edward Jenkins was apparently the only one directly notified by *147 the State and it is unclear whether the other claimants fall within the rationale of Johnson (supra) (only the appeal of the direct recipient of the erroneous death notification was involved in the Court of Appeals decision in Johnson). However, the message to Edward Jenkins was obviously made with the knowledge if not the intent that it would be communicated to members of George Jenkins’ immediate family, to wit, his mother, father and brother and sister, the other claimants herein. Damage to them was thus foreseeable and hence “within the ‘orbit of * * * danger’ and * * * ‘orbit of * * * duty’ ” (Johnson v State of New York, supra, p 383). Absent apposite appellate authority to the contrary, we think fundamental negligence principles should be applied and they indicate the claims of said other claimants have the appearance of merit. (See, e.g., Palsgraff v Long Is. R.R. Co., 248 NY 339, 344, 345.) Only permission to late file is involved here. No final or conclusive determination of the ultimate merits of said claims is being made. Such would be manifestly inappropriate on the sparse factual record on this motion, particularly where neither party raised the issue. It is clear in any event that Edward Jenkins has a meritorious claim and granting the motion is thus proper at least to him. A motion for dismissal is the appropriate vehicle for the determination of the specific claims of said other claimants. We do not think a nisi prius court on a motion such as this is the proper venue or situation for making the legal policy judgments inhering in such a determination.
The next factor, prejudice, is facially somewhat troublesome because of the extensive time that has elapsed since the subject events occurred, to wit, just under three years (see Court of Claims Act, § 10, subd 6; CPLR 214, subd 5). However, any necessary evidence was not shown to be transitory (cf. Malek v State of New York, 92 AD2d 659; Gatti v State of New York, 90 AD2d 840) and defendant gave no indication that the State employees or records involved were unavailable. Its unsupported conclusory statement alleging prejudice is not sufficient. Hence we do not find that substantial prejudice to defendant has been *148 established, particularly in view of its letter acknowledging awareness of its error within three weeks thereof.
We note that a recent Second Department, Appellate Division, case has held that a failure to demonstrate a reasonable excuse for a similarly substantial delay warranted denial of a late filing application on the basis of that factor alone. (See Innis v State of New York, 92 AD2d 606.) However, a prior Fourth Department, Appellate Division, decision concluded that only the applicable statutory filing period (here 90 days — see Court of Claims Act, § 10, subd 3) should be considered with respect to the factor of excuse, and that delay beyond that period should be considered within the factor of prejudice. (See Cole v State of New York, 64 AD2d 1023, 1024.) Apparently, the issue of the timeliness of a late filing application in the Court of Claims, insofar as it relates to the factors of excuse and prejudice (see Court of Claims Act, § 10, subd 6), has not come before the First Department, Appellate Division, the controlling department for this claim (see Court of Claims Act, § 24). At least, no apposite authority from said department, or from the Court of Appeals, was disclosed by this court’s research. The conflict in authority on this issue between the Appellate Divisions of the Second and Fourth Departments may appear largely semantical, but we believe there is a significant substantive difference.
A useful albeit limited analogy can be made between this court’s discretionary power under subdivision 6 of section 10 of the Court of Claims Act and the discretionary equitable doctrine of laches. (See 36 NY Jur, Limitations & Laches, § 156.) Under the laches doctrine, mere delay, however long (subject to statutory time limitations), does not preclude relief. Rather, there must also be some circumstance associated with the delay which has worked a disadvantage to defendant, to wit, prejudice. (See id., § 158.) As indicated above, defendant has not sufficiently alleged any prejudice and none is manifest from the circumstances of the claim. This is not to suggest that circumstances alone can never provide a sufficient indication of prejudice, but only that prejudice should not be presumed in every case merely from the passage of time. Otherwise, it could be argued that denying relief solely on the basis of *149 what a court finds to be excessive delay, irrespective of lack of prejudice or other considerations, in effect constitutes impermissible judicial legislation, to wit, substituting a court determined time limit for the legislatively mandated one. In any event, whatever the legal implications of the noted conflict between the Second and Fourth Departments, and absent Court of Appeals or First Department authority to the contrary, we believe that, in the circumstances presented here, our ultimate determination is not an abuse of discretion or an error of law.
Finally, as to the factor of alternate remedy, claimants seemingly have none, particularly in view of the institutional as opposed to individual nature of the negligence apparently involved.
Accordingly, considering the various factors, noting that only the lack of a reasonable excuse weighs against claimants’ motion (see Bay Terrace Coop. Section IV v New York State Employees’ Retirement System Policemen’s & Firemen’s Retirement System, 55 NY2d 979), we find it proper in our discretion and in the interest of justice to grant claimants permission to serve and file a late claim.

. We have based our finding of the accrual date on the allegation thereof in *145 claimant Edward Jenkins’ affidavit, an allegation not refuted by the State. (See Schweickert v State of New York, 64 AD2d 1026, and case cited.)

. Prior thereto, it was ascertained that the body shipped was not George Jenkins and claimants then apparently contacted Manhattan Psychiatric Center, thereupon discovering the error.

. Goldstein v State of New York (75 AD2d 613) holds that medical affidavits or hospital records are necessary to adequately establish physical disability as a reasonable excuse. Schreck v State of New York (81 AD2d 882) is a recent case denying a motion for late filing of a medical malpractice claim because “1 cllaimants failed to submit a medical affidavit to establish a causal relationship between the alleged negligent acts and the birth of claimants’ seriously brain damaged and physically handicapped child.” Clearly, the Schreck case is factually distinguishable from the one at bar and, as indicated above, legally inapposite.