■ CARMEN MARTINEZ et al., Respondents, v LONG ISLAND JEWISH HILLSIDE MEDICAL CENTER et al., Appellants, et al., Defendant.—In an action to recover damages for personal injuries, etc., based on medical malpractice, the defendants Long Island Jewish-Hillside Medical Center, Ernest Lieber and Morris Rabinowitz appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Nassau County (McGinity, J.), dated May 16, 1984, as, upon a jury verdict and upon a stipulation reducing the amount of that verdict, is in favor of the plaintiff Carmen Martinez and against them in the principal sum of $125,000, and in favor of the plaintiff Arthur Martinez and against them in the principal sum of $25,000.

Judgment reversed insofar as appealed from, on the law, without costs or disbursements, and complaint dismissed insofar as it is asserted against the appellants, and the plaintiffs' action against the remaining defendant severed.

No cause of action exists to recover solely upon a claim of emotional injuries suffered by a mother as the result of physical harm done to her child in utero (see, Tebbutt v Virostek, 65 NY2d 931; Vaccaro v Squibb Corp., 52 NY2d 809; Farago v Shulman, 104 AD2d 965, affd 65 NY2d 763; Friedman v Meyer, 90 AD2d 511). Bracken, Lawrence and Kunzeman, JJ., concur.

Gibbons, J. P., dissents and votes to affirm the judgment insofar as appealed from, with the following memorandum: This case is as simple as it is tragic. A jury found that the appellants were responsible for negligently misinforming the plaintiff Carmen Martinez's obstetrician that her ingestion of "massive doses" of a steroid would cause her unborn child to develop a cleft palate and suffer gross brain damage. Mrs. Martinez was ultimately persuaded, after initial resistance and after she canceled a scheduled abortion, that her child would be born not only with a cleft palate as originally advised, but with such severe brain damage that it would not even be able to breathe without machines and would be permanently institutionalized. Despite her religious convictions, Mrs. Martinez was induced to undergo an abortion.

The appellants' records reveal that the advice they gave to Mrs. Martinez's obstetrician was based upon an erroneous and unverified premise that she had taken 500 milligrams of a steroid four times a day over a period of weeks. The actual dosage was only .5 milligrams, an amount that was not likely to harm the fetus.

Thus, it is apparent that Mrs. Martinez was not injured as a result of physical harm done to her child in utero, but, rather, was injured upon being misinformed that her fetus was hopelessly malformed and that an abortion was necessary *(cf. Tebbutt v Virostek,* 65 NY2d 931; *Vaccaro v Squibb Corp.,* 52 NY2d 809).* Her injury was later compounded upon learning of the appellants' tragic error after she had aborted the healthy fetus.

Notwithstanding the reluctance exhibited in prior case law to award damages for psychic injury, dogmatic categorization of Mrs. Martinez's injury must not obscure the nature of her cause of action.

This is not a bystander case where no duty is owed to one who is indirectly harmed by witnessing injury to a third party. Recovery will not extend liability beyond rational practical boundaries *(see, Tobin v Grossman,* 24 NY2d 609, 618; *cf. Bovsun v Sanperi,* 61 NY2d 219).

Nor does this case raise the same concerns as its reverse counterpart, i.e., what has been termed "wrongful life" *(see, Becker v Schwartz,* 46 NY2d 401, 405).* In such cases it is claimed that had the plaintiffs been properly advised by the defendants of the risks of abnormality, their infants would never have been born *(see, Becker v Schwartz, supra,* p 410). Recovery for "wrongful life" is denied because the emotional injury is mitigated by the emotional fulfillment arising from the birth. Thus, the emotional injury remains "too speculative to permit recovery notwithstanding the breach of a duty flowing from the defendants to [the plaintiffs]" *(see, Becker v Schwartz, supra,* p 415; *see also, Howard v Lecher,* 42 NY2d 109).

Here, the plaintiffs have established the existence of a duty running from the appellants to the plaintiff Carmen Martinez pursuant to *Johnson v State of New York* (37 NY2d 378) *(see, Tebbutt v Virostek,* 65 NY2d 931, 932, *supra).* The appellants had a duty to correctly ascertain the dosage of Mrs. Martinez's medication, and, in the event that the dosage appeared abnormally high, to verify the dosage with the prescribing physician. The appellants failed in both regards and, as a result, misinformed Mrs. Martinez's obstetrician as to the physical condition of the fetus, an error which ultimately resulted in an unwanted and needless abortion. "[T]here exists [here] 'an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious' " *(Johnson v*

*State of New York,* 37 NY2d 378, 382, quoting Prosser, Torts § 54, at 330 [4th ed]). Furthermore, the consequential abortion and the serious psychological impact on the plaintiffs of the false message that the fetus would be hopelessly incapacitated were foreseeable. "Thus, the [appellants] owed claimant a duty to refrain from such conduct, a duty breached when [they] negligently sent the false message. The false message and the events flowing from its receipt were the proximate cause of claimant's emotional harm. Hence, claimant is entitled to recover for that harm" *(see, Johnson v State of New York, supra,* p 383). Finding the plaintiffs' claims to fall squarely within the rationale of *Johnson,* I would vote to affirm the judgment insofar as appealed from, and, accordingly, I dissent.