■ ELIZABETH WELLS, Individually and as Administratrix of the Estate of LEROY WELLS, Deceased, Respondent, v ST. LUKE'S MEMORIAL HOSPITAL CENTER, Appellant.—Kane, J. P. Appeal from an order of the Supreme Court (Walsh, Jr., J.), entered October 3, 1986 in Montgomery County, which denied defendant's motion for summary judgment dismissing the complaint.

In October 1979, decedent suffered kidney failure and began receiving hemodialysis treatments from defendant. Decedent was not a candidate for a kidney transplant and began chronic maintenance dialysis in January 1980. The regularly scheduled dialysis treatments changed decedent's life-style, rendering him unable to work and curtailing his usual activities.

During the three-year period prior to his death, decedent availed himself of defendant's department of social services. The social workers who met periodically with decedent and his wife, plaintiff herein, counseled decedent regarding his adjustment to dialysis and his financial concerns. The social workers' notes reflect the fact that decedent was depressed and fatigued by his dialysis program and anxious about the costs associated therewith. Decedent was prohibited from returning to his strenuous job as a leather worker and was forced to support himself, his wife and his son on a fixed income of monthly Social Security disability checks. The social workers noted that decedent felt a loss of control over his life and a hopelessness about his situation.

On numerous occasions, decedent mentioned concern over the mounting bills associated with his treatment and his inability to pay the same. An agreement was reached between defendant and decedent whereby he would pay $15 per month on his balance as this was all he could afford. Defendant contends that this payment arrangement pertained to only one of several accounts owed to defendant by decedent and that a total of $5,370.34 accumulated on the remaining accounts. Defendant placed the outstanding accounts in collection, claiming that decedent never responded to requests for payment, requested an extension or arranged for alternative payment. As a result, on January 15, 1983, defendant commenced an action against decedent seeking the payment of $5,768.32 allegedly due for medical treatments he received from January 1, 1981 to April 10, 1982.

On January 18, 1983, decedent and plaintiff spoke with one of defendant's social workers; decedent was upset, nervous and

anxious about the suit for collection. Plaintiff claims that at this meeting the social worker told them that defendant planned to take decedent's home and car in satisfaction of the debt. These were decedent's only significant assets and the car was necessary to transport him to his dialysis treatments. The social worker denies having said that the hospital was planning to attach decedent's home and contends that he assured decedent he would do what he could to straighten the matter out. The social worker suggested that decedent and plaintiff retain an attorney to resist the placing of a lien on their home. In the early morning hours of January 19, 1983, decedent shot himself with a 12-gauge shotgun and was pronounced dead on arrival at a nearby hospital.

Plaintiff commenced this action against defendant to, *inter alia,* recover damages for decedent's conscious pain and suffering as well as his wrongful death caused by defendant's negligent and/or tortious acts.* Plaintiff contends that a body of credible medical evidence exists proving that depression is a common side-effect of dialysis and that the suicide rate is inordinately large among end-stage renal disease patients in comparison to the general population. Consequently, plaintiff alleges that defendant acted unreasonably in sending a summons and complaint to decedent, who was known to be depressed, anxious and worried about his dialysis in general and his finances in particular. Furthermore, plaintiff contends that defendant failed to advise decedent of certain government financial assistance that may have been available under the Social Security Act and the Hill-Burton Act. Defendant moved for summary judgment dismissing the complaint claiming that the action was without legal merit. The motion for summary judgment was denied on the ground that triable issues of fact exist, and this appeal ensued.

We are constrained to reverse and grant summary judgment to defendant dismissing the complaint. Although defendant's decision to sue rather than pursue a more amicable approach to collect the debt was an insensitive and ill-advised act, it was an action which defendant had every legal right to commence. In any event, decedent's suicide was not a foreseeable risk associated with the alleged wrongful acts of defendant, i.e., neglecting to inform decedent of available financial assistance, suing decedent for a debt he was unable to pay

---

* Plaintiff also alleged a cause of action in her individual capacity seeking to recover money damages for emotional distress. Apparently, this cause of action was earlier dismissed by Supreme Court and is not a part of this appeal.

from his limited income and threatening to take decedent's only significant assets. Defendant's alleged negligence is simply too attenuated to be the proximate cause of decedent's suicidal act *(see, Martinez v Lazaroff,* 48 NY2d 819, 820; *cf., Fuller v Preis,* 35 NY2d 425, 534).

In conclusion, however, we express our hope that defendant and others similarly situated approach billing problems such as those presented here in a more understanding and compassionate manner.

Order reversed, on the law, without costs, motion granted and complaint dismissed. Kane, J. P., Casey, Yesawich, Jr., and Levine, JJ., concur.

Weiss, J., dissents and votes to affirm in a memorandum. Weiss, J. (dissenting). I respectfully dissent. By virtue of decedent's status as a dialysis patient and participant in defendant's counseling program, it is evident that defendant owed decedent a duty to act reasonably with respect to decedent's medical and psychological treatment. Plaintiff essentially maintains that since defendant was aware of decedent's state of depression, defendant was negligent in failing to disclose potential sources of financial assistance, in commencing a lawsuit to collect an outstanding debt, and in threatening to take decedent's home and car in satisfaction of the debt. Plaintiff theorizes that the resulting mental disturbance drove decedent to commit an involuntary act of suicide. To support this theory, plaintiff propounded medical evidence that depression is commonly associated with dialysis and that a high potential for suicide exists among end-stage renal disease patients. It is also evident that defendant's counselors were cognizant that decedent was depressed by the dialysis treatment and his financial status. Moreover, the parties have taken divergent positions as to the nature of the payment agreement reached, whether decedent was informed of the potential for outside financial assistance, and whether a counselor advised decedent that his home and car would be seized. These averments raise genuine questions of fact as to whether defendant's conduct was negligent.

The issue distills to whether defendant's negligence was a proximate cause of decedent's death. To make this showing, plaintiff was required to establish that defendant's conduct was a substantial causative factor in the series of events leading to decedent's suicide *(see, Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 520; Restatement [Second] of Torts § 430 [1965]). Where, as here, an intervening act contributes to the

ultimate injury, liability is predicated on whether such "act is a normal or foreseeable consequence of the situation created by the defendant's negligence *(Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315). In *Fuller v Preis* (35 NY2d 425), the Court of Appeals determined that a negligent tort-feasor may be held accountable "for the suicide of persons who, as the result of [the wrongdoer's] negligence, suffer mental disturbance destroying the will to survive" *(supra,* at 428). Suicide is not, as a matter of law, a superseding cause precluding liability *(supra,* at 429).

Although the instant case differs from *Fuller* in that decedent's suicide was ostensibly precipitated by the infliction of mental rather than physical injury, such distinction does not serve to bar recovery. The negligent infliction of emotional harm, without concurring physical injury, is actionable when the injury results directly from the breach of duty *(see, Kennedy v McKesson Co.,* 58 NY2d 500, 504-507; *Johnson v State of New York,* 37 NY2d 378; *Battalla v State of New York,* 10 NY2d 237, 238-239; *Ferrara v Galluchio,* 5 NY2d 16, 21-22). This holds true notwithstanding the difficulty of proving the claim *(Battalla v State of New York, supra; see, Bovsun v Sanperi,* 61 NY2d 219, 231). While this case presents a novel situation in that the alleged emotional injury has led to suicide, in my view, under the specific circumstances presented, a jury question of fact exists as to whether it was reasonably foreseeable that decedent would commit suicide in reaction to defendant's conduct. Accordingly, Supreme Court properly denied defendant's motion for summary judgment.