**Samuel KOHN, Goldie Kohn and Denise Kohn, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

Nos. 81 C 1039, 82 C 2259.

United States District Court, E.D. New York.

July 31, 1984.

Sudler & Barth, Alan Winkler, New York City (Patrick H. Barth, New York City, of counsel), for plaintiffs.

Raymond J. Dearie, U.S. Atty., Brooklyn, N.Y. (Reuben S. Koolyk, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiffs brought this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* (the Act). They seek damages for torts allegedly committed against them by the United States Army following the fatal shooting of their son and brother, Marc A. Kohn, during his service in the Army. Plaintiffs Samuel and Goldie Kohn were his parents and plaintiff Denise Kohn was his sister.

This court dismissed the original complaint on the authority of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which held that the Act does not impose liability for injuries to servicemen arising out of activity incident to service. The Court of Appeals reversed in part, holding that the *Feres* case was not a bar to claims raised by family members in their own right. 680 F.2d 922, 926 (2d Cir.1982). The court remanded to permit plaintiffs to litigate their third claim, which sought damages for emotional distress allegedly caused them by the Army's actions after the death.

Plaintiffs filed an amended tort claim with the Department of the Army, pursuant to 28 U.S.C. § 2674(a). The claim was denied. Plaintiffs then filed an amended complaint here. The case was tried to the court.

The pertinent facts are as follows. Marc Kohn was on active Army duty, serving as a military policeman with the drug suppression team at Fort Campbell, Kentucky, when he was shot in the head by a fellow soldier, George Marshall Hale, on January 29, 1980. Kohn died some two and a half hours later.

On the next day, after a preliminary investigation suggested that Hale had accidentally discharged his weapon, he was charged with negligent homicide. Hale was interviewed further ten days later, February 9, 1980, and the Army then charged him with murder. He was convicted by a general court-martial of involuntary manslaughter.

The morning after Kohn's death, the acting commanding officer, without informing Kohn's next of kin or obtaining their consent, ordered an autopsy, and it was performed. Some of the internal organs removed from the body were then cremated. Some sections have been preserved and are still held by the Army hospital.

Following the autopsy, a private funeral director in Kentucky embalmed Kohn's body and performed restoration of the eye area. The body was flown to New York on January 31 pursuant to the family's wishes, as communicated to the Army by one of the family's rabbis. The body was accompanied by a soldier from Fort Campbell. A telegram requesting detailed disposition instructions from the family, as required by Army regulation 638–40, was never sent.

Major (then Captain) Coates went to plaintiffs' home the day after the shooting, and informed Mrs. Kohn that her son had died of a gunshot wound and that the incident was under investigation. Major

Coates assisted Mrs. Kohn in making telephone calls and was still at the home when Rabbi Emert, an associate of Rabbi Eliott Spar, who testified at trial, arrived at the home and began arranging for the prompt transportation to New York and burial of Marc Kohn's body.

Sergeant Edward L. Priddy, the "survivor assistance officer," arrived at the Kohns' home on the evening of the same day. He assured the family that the investigation was proceeding. However, plaintiffs did not learn until after the funeral that Marc Kohn died from a gunshot wound to his head.

The funeral was held on February 3, 1980. Defendant concedes that the ceremonial platoon that had been promised for the funeral did not appear. Three representatives of the Army were present; one of them, Sergeant Priddy, spoke. A flag was presented to the family. Two days later, a graveside ceremony was performed by an Army burial detail; plaintiffs did not attend.

Plaintiffs ask damages for the emotional distress allegedly caused by the following acts of the Army: performing an unauthorized autopsy, failing to return organs to the body for burial, embalming the body, and cremating missing organs, all in violation of plaintiffs' deep religious beliefs as members of the Jewish faith; communicating inaccurate and misleading information about the circumstances of the death; failing to provide an honor guard at the burial; losing or destroying certain of Marc Kohn's personal effects; mailing Army recruitment literature to the Kohn family home; and mailing pictures of the autopsy to plaintiffs instead of to their attorney, as they requested.

## I

Section 2674 of the Act provides, in pertinent part:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not

be liable for interest prior to judgment or for punitive damages.

The United States tries to revive the defense of the so-called *Feres* doctrine, at least with respect to the claims of wrongful autopsy, embalmment, and retention and cremation of Marc Kohn's organs, urging that these actions by the Army were "incident" to Kohn's service. But this contention has been rejected by the Court of Appeals. The claims are by the family members "in their own right." *See* 680 F.2d at 926. They do not seek to vindicate Kohn's own right to a proper burial.

■ The United States cannot be held liable under the Act for the performance of or failure to perform "discretionary" functions. 28 U.S.C. § 2680(a). The United States does not argue that liability is precluded here on this ground. Nor does the recent Supreme Court decision in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, — U.S. ——, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), suggest that this concession was improvident. *See also Caban v. United States*, 671 F.2d 1230, 1233 (2d Cir.1982).

■ The Army's actions in the handling of the body and the treatment of the family did not involve the government's regulation of private conduct or policy judgments to advance important governmental purposes. There is thus no basis for considering those actions discretionary.

## II

The Act does not permit plaintiffs to bring an action before they have exhausted the administrative remedies. 28 U.S.C. § 2675. The United States argues that plaintiffs have not exhausted those remedies with respect to the Army's retention and cremation of the organs because the administrative claim did not raise those matters.

Plaintiffs learned of these acts only during the course of the litigation, some time after the burial. Indeed, the cremation did not come to light until revealed in a No-

vember 23, 1983 letter from the United States' attorney to plaintiffs' attorney. But the United States urges that since plaintiffs learned of the autopsy within three weeks of the death, they could have at that time inquired into standard autopsy procedures and discovered, for example, that the brain was not returned for burial.

■ Plaintiffs were not required to investigate immediately all the details of the autopsy. The United States did not disclose them, and plaintiffs' administrative claim of needless disfigurement of the body was sufficient to give notice of a claim relating to the missing organs.

## III

Section 1346(b) of the Act provides the court with jurisdiction over claims for money damages against the United States

> for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The parties agree that, under the Act, New York law applies to such tortious conduct as occurred in New York. The United States argues that Kentucky law applies to the claims of alleged mishandling of Marc Kohn's body at Fort Campbell.

■ The Act, as interpreted by *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962), requires that where the conduct occurs in one state and results in an injury in another state, the court must apply "the whole law," including choice-of-law rules, of the state where the act or omission, not the injury, occurred. Thus, the court will look to the choice-of-law principles of each state, New York or Kentucky, where an alleged tortious act or omission took place in order to determine the substantive law to apply to each claimed tort.

■ In New York, *lex loci delicti* is the general rule in tort cases, to be displaced only in "extraordinary circumstances." *Cousins v. Instrument Flyers, Inc.*, 44 N.Y.2d 698, 699, 376 N.E.2d 914, 915, 405 N.Y.S.2d 441, 442 (1978). The substantive law of New York thus applies to the alleged tortious conduct committed by the Army in its dealings with plaintiffs here, since both the conduct and the injuries occurred here.

The Kentucky courts appear no longer to follow the pure *lex loci delicti* rule. However, when a Kentucky court has jurisdiction, it favors the application of Kentucky's substantive law if there are any significant contacts with that state. *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky.1972); *Grant v. Bill Walker Pontiac-GMC, Inc.*, 523 F.2d 1301, 1304 (6th Cir.1975).

■ Accordingly, the court will look to Kentucky law in evaluating the claims of wrongful autopsy, embalmment, and retention and cremation of the organs.

## IV

One of the chief claims that plaintiffs assert is that they have been and will continue to be caused emotional distress by the Army's treatment of Marc Kohn's remains in a manner violative of Jewish law and precepts. The plaintiffs sincerely believe that the performance of an autopsy, the embalming of the body, and the retention and cremation of parts of the body were contrary to fundamental principles of Jewish law.

### A.

Most religions in the world hold that the remains of a deceased must be treated with honor and respect. Judaism believes in the principle that body and soul are sacred because both are the handiwork of God and hence are entitled to reverence. I. Klein, *A Guide to Jewish Religious Practice* 270 (1979) (herein called *Guide* ); Rosner, *Autopsy in Jewish Law and the Israeli Autopsy Controversy*, in Jewish Bioethics 331, 332 (1979). In accordance with this

premise Jewish law teaches that the whole body should be buried, and that if parts have been removed, for examination or otherwise, they must be returned and buried with the rest of the body. *Id.* at 332, 335, 338; *Guide, supra,* at 275, 276; 3 *Encyclopedia Judaica* 932, 934 (1978); I. Klein, *Responsa and Halakhic Studies* 38, 39 (1975). Rabbi Elliot T. Spar, the plaintiffs' Rabbi and, according to him, the sole official interpreter of Jewish law for them, testified to the same effect. He said that the soul of the deceased will find no rest until all parts of the body, or at least those parts which it is possible to find, have returned to the earth. *See also* Rosner, *supra,* at 336.

The court finds that the plaintiffs sincerely believed in this doctrine as expressed to them by Rabbi Spar, and that they were surprised, shocked and dismayed by the fact that parts of Marc Kohn's body had been removed and cremated and thus were not available for burial. Physical mutilation of the remains may be expected to distress the next of kin. But where they believe that that treatment will affect the afterlife of the deceased, the impact inevitably is greater.

The law in the United States appears to be established that the next of kin have the right to possession of the dead body and that they may have damages for the injury to their feelings from any wrongful handling of the corpse. *See Larson v. Chase,* 47 Minn. 307, 50 N.W. 238 (1891). The law of Kentucky is no exception. *Streipe v. Liberty Mutual Insurance Co.,* 243 Ky. 15, 47 S.W.2d 1004, 1005 (1932). Nor is that of New York. *Thompson v. Duncan Bros. Funeral Home, Inc.,* 116 Misc.2d 227, 455 N.Y.S.2d 324, 326 (N.Y.Civ.Ct. 1982); *Lott v. State of New York,* 32 Misc.2d 296, 225 N.Y.S.2d 434 (Ct.Cl.1962); *Burke v. New York University,* 196 A.D. 491, 188 N.Y.S. 123 (1st Dep't 1921); *Hendriksen v. Roosevelt Hospital,* 297 F.Supp. 1142 (S.D.N.Y.1969).

The applicable law thus requires those who deal with the body to do so with due regard for the feelings and beliefs of the next of kin. In other words the next of kin have an interest in the respectful treatment of the corpse, and in the case of those holding the views such as the plaintiffs, an interest akin to that protected by the First Amendment.

From the record in this case it appears that the Army, although it knew Marc Kohn was of the Jewish faith, was entirely oblivious to the beliefs of that faith that the entire body must be buried and that parts that have been removed, by human agency or otherwise, should be returned for burial. Nor did the Army attempt to ascertain whether the plaintiffs had such beliefs.

The court need not consider what the duty of the Army personnel in that respect would have been had this case concerned a deceased belonging to some obscure sect. It is hardly too much to ask that Army doctors and officers have some sensitivity to the beliefs of the ancient Jewish faith and specifically to the belief stemming from the Bible, Deuteronomy 21:22–23, that the entire body should be interred.

Of course, the interest of the next of kin as to the treatment of the remains may not override a legitimate and important governmental concern. *Cf. Goldman v. Secretary of Defense,* 734 F.2d 1531 (D.C.Cir. 1984). But here the United States advances no plausible need for it to dispose of or cremate parts of the body and thus make them unavailable for burial. Certainly mere convenience to the Army is not a justification. In the City of New York autopsies on a decedent of the Jewish faith are performed on a shroud so as to preserve blood and tissue for burial. There has been no suggestion that the Army could not have done likewise.

The United States similarly cannot excuse the retention indefinitely of those parts of the body that have not been cremated. To say that a practice is "accepted" is not to justify it.

## B.

Under Army Regulation No. 40–2, ¶ 4–4(b)(1), a commander may authorize an au-

topsy on the remains of a serviceman, without the consent of the next of kin, only in a limited number of situations. One of those is where the applicable state law authorizes the autopsy. Kentucky law does so. The coroner may order an autopsy when he has "reasonable cause for believing that the death of a human being within his county was caused by homicide." Ky.Rev.Stat. §§ 72.405, 72.410.

■ The circumstances of Marc Kohn's death justified the performance of an autopsy. It would not be appropriate for this court to determine that it was unnecessary to determine the precise cause of death. Certainly the results were relevant evidence in the prosecution of Hale. The interest of the next of kin, though based on their sincere beliefs, does not outweigh the governmental interest in performing the autopsy.

### C.

■ The plaintiffs were also of the belief that embalming was prohibited by Jewish law. Army Regulation 638–40 governs the care and disposition of remains of deceased Army personnel. Immediately following notification of death, Army authorities are to request disposition instructions from the next of kin regarding "final arrangements" for the deceased. (¶ 4–4). Immediate embalming is authorized when there is an "unusual delay in obtaining disposition instructions ... and further delay will prevent proper preservation of remains" (¶ 4–4(b)(1)(c)). There is no indication here of such an unusual delay. In fact, telephone instructions were conveyed by Rabbi Emert to Army authorities on January 30, just a day after Kohn's death. The evidence does not indicate that the time consumed by the autopsy and transport of the body constitute an "unusual delay" such as would necessitate embalming. The court thus need not reach the question of whether the regulation, insofar as it might override the religious beliefs of the next of kin, is invalid.

### D.

The court concludes that the United States is liable for the distress caused the next of kin by the cremation or retention of parts of Marc Kohn's body and by the embalming of the body, but not for the distress caused by the performance of the autopsy.

### V

Plaintiffs' remaining claims of tortious behavior have not been sustained.

New York law does not afford damages for the negligent failure of the Army to inform plaintiffs of the full details of Kohn's death. This is not comparable to the negligent mishandling of a corpse or the giving of false information as to a death, *Johnson v. State of New York*, 37 N.Y.2d 378, 334 N.E.2d 590, 372 N.Y.S.2d 638 (1975), or the failure to give timely notification of a family member's death. *See Estate of Finn v. City of New York*, 76 Misc.2d 388, 350 N.Y.S.2d 552 (1st Dep't 1973).

■ Plaintiffs were notified promptly of the death, in accordance with Army rules that next of kin be notified between the hours of 6:00 A.M. and 10:00 P.M. The Army representatives were not in a position to tell the family that Kohn was intentionally shot. The Army had not yet reached that conclusion. While the failure in the initial days following the death to disclose details such as the location of Kohn's wound and the role played by Hale hardly seems wise, the court does not find the reports of Major Coates and Sergeant Priddy to be inaccurate and misleading. Moreover, the Army made sufficient efforts over the following weeks and months to inform the family of those details and of the proceedings against Hale.

Plaintiffs could recover for the Army's failure to provide an honor guard at the burial, disposal of certain of Kohn's personal effects, and mailing of recruitment literature and autopsy pictures to the Kohn home only if this conduct exceeded "all bounds usually tolerated by decent socie-

ty." *Fischer v. Maloney,* 43 N.Y.2d 553, 557, 373 N.E.2d 1215, 402 N.Y.S.2d 991 (1978).

■ Surely the aggregation of mishaps was capable of causing emotional distress to the grieving plaintiffs. But plaintiffs have not proven that any of the acts rises to the level of the New York tort of intentional infliction of emotional distress. Army representatives were present at the burial although the honor guard was not; the Army sent a detail two days later and a letter of apology to attempt to compensate for the oversight. While all of Kohn's remaining personal effects were mailed to plaintiffs, they apparently never arrived in New York. However, plaintiffs accepted $459.74 "in full settlement" for the lost articles. A Major Carter testified that he destroyed only blood-stained clothing, and non-personal correspondence of Kohn's in accordance with Army Regulation 638–1.

After hearing of the mailing of recruitment literature addressed to Denise, "typical mailing list stuff," Sergeant Priddy informed the area recruiter to take Denise off the general list. Finally, Sergeant Priddy acted on the parents' request that the autopsy report be sent to them. Although the pictures were not removed from the report, in light of the parents' desires to see the report and the Army's attempt to comply the court does not find outrageous or malicious conduct.

### VI

The United States argues that it is virtually impossible to evaluate in monetary terms the mental distress caused plaintiffs by the Army's conduct. It is true that recovery may be had only for the distress caused by the cremation or retention of the parts of the body and by the embalming. No doubt much of the family's grief was due to the fact that Kohn had died, and that grief was compounded by the parents' opposition to his enlistment and their feelings of anger toward the Army for what they deemed its negligence in the shooting incident.

The United States also submits that plaintiffs' proof, unsupported by medical testimony, was insufficient to show the requisite "guarantee of genuineness" of emotional trauma. *See Johnson v. State of New York, supra,* 37 N.Y.2d at 382, 384, 334 N.E.2d 590, 372 N.Y.S.2d 638.

Plaintiffs here testified as to the shock and horror they experienced upon learning that Marc Kohn's body had been dealt with in violation of their Jewish beliefs and buried other than in its entirety. Rabbi Spar, who holds a master's degree in psychology and who counseled plaintiffs throughout, testified about the disruption of the grieving process and the disintegration of the relationship between the parents as the facts came to light. The court finds that testimony credible.

Fixing a monetary amount to compensate plaintiffs for their injuries is admittedly difficult. The case of *Thompson v. Duncan Bros. Funeral Home, Inc.,* 116 Misc.2d 227, 455 N.Y.S.2d 324, 327 (N.Y. Civ.Ct.1982), may serve as an analogy. There the court awarded $35,000 to the mother of a man whose body had been negligently treated and embalmed by defendant. As a result of the negligence, when the casket was opened for display to the plaintiff and family members, they were confronted by decomposed, swollen and distorted remains. The court stated, in awarding the damages, that the last memory of her son would cast "an oppressive shadow" over the mother for the remainder of her life.

■ The next of kin here must live with perhaps a more acute anguish, caused by their knowledge of the Army's handling of their son's body so as to preclude complete and proper burial and rest for the soul according to the tenets of their religion. The court awards $105,000 to Samuel Kohn and $105,000 to Goldie Kohn.

■ The right to damages here exists in the next of kin in the order of their relation to the deceased. *Steagall v. Doctors Hospital,* 171 F.2d 352, 353 (D.C.Cir. 1948). Each state's law of descent and

distribution determines that order. In Kentucky, a sister does not inherit if the parents of the deceased are alive. Ky.Rev. Stat. §§ 391.010, 391.030. Thus, Denise Kohn cannot recover.

The United States has consented to deliver to Samuel Kohn and Goldie Kohn all parts of Marc Kohn's body that the United States still retains. The court assumes this will be done no later than 15 days after the entry of this order. The court thus need not decide whether the next of kin are entitled to possession of those parts.

The foregoing constitutes the court's findings of fact and conclusions of law. So ordered.