Walter Gene BLAKEY, as Personal Representative of the Estate of Walter Scot Blakey, Deceased, Walter Gene Blakey and Mary Lou Blakey, individually, Plaintiffs,

v.

USS IOWA, United States Department of the Navy, and the United States of America, Defendants.

Civ. A. No. 91–245–N.

United States District Court, E.D. Virginia, Norfolk Division.

Dec. 2, 1991.

Lawrence P. Nolan, Lawrence P. Nolan & Associates, Eaton Rapids, Mich., Thomas Brady Shuttleworth II, Shuttleworth, Ruloff, Giordano & Kahle, Virginia Beach, Va., for plaintiffs.

Kenneth Everett Melson, U.S. Attorney's Office, Alexandria, Va., Michael Anson Rhine, U.S. Attorney's Office, Norfolk, Va., Debra J. Kossow, Sr. Admiralty Counsel, Marie Louise Hagen, Trial Atty., U.S. Dept. of Justice, Civ. Div., Torts Branch, Washington, D.C., for defendants.

## OPINION AND ORDER

DOUMAR, District Judge.

This matter comes before this Court on Defendants' motion to dismiss, or in the alternative, for summary judgment. Plaintiffs Walter Gene Blakey ("W. Gene Blakey") and Mary Lou Blakey are parents of decedent Walter Scot Blakey, and they are suing individually. W. Gene Blakey is also serving as the personal representative of the estate of his son Walter Scot Blakey ("the estate"), and the estate represents both decedent's parents and his four siblings. Decedent was on active duty in the Navy and was assigned to the United States Ship IOWA ("U.S.S. IOWA"). Plaintiffs' numerous claims can be categorized under two headings: (1) claims arising out of decedent's death by virtue of the explosion and (2) claims arising out of the Department of the Navy's investigation into the cause of the explosion that led to decedent's death. Defendants assert that

this Court does not have subject matter jurisdiction over either category of claims.

The first category of claims asserts wrongful death and survival actions arising out of the death of Walter Scot Blakey on April 19, 1989 as a result of an explosion in Turret II of the U.S.S. IOWA. These claims are brought on behalf of both the estate and decedent's parents individually. These various claims are filed pursuant to the general maritime common law, the Death on the High Seas Act, 46 U.S.C.App. § 761 *et seq.*, the Public Vessels Act, 46 U.S.C.App. § 781 *et seq.*, the Jones Act, 46 U.S.C.App. § 688, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* At issue in the claims arising out of Walter Scot Blakey's death is the applicability of the *Feres* doctrine which bars claims against the United States for injuries to servicemen that are incident to military activity.

The second category of claims asserts emotional distress actions arising out of the Department of the Navy's post-accident investigation of the explosion. Decedent's parents have brought these claims pursuant to the FTCA as a result of the Navy's alleged negligence in its investigation. At issue in the claims arising out of the Navy's investigation is the applicability of 28 U.S.C. § 2680(a), the discretionary function exception to the Federal Tort Claims Act.

This Court finds that the *Feres* doctrine bars Plaintiffs' claims arising out of decedent's death by virtue of the explosion. This Court will not disregard or upset such a well-settled doctrine. This Court further finds that the discretionary function exception to the FTCA bars Plaintiffs' claims for emotional distress arising out of the Department of the Navy's internal investigation of the explosion. By deciding this issue, this Court does not decide whether there is standing for the parents to bring such an action or whether such an action even exists. For the reasons set out below, this Court grants Defendants' motion to dismiss.

Due to the unclear presentation of Plaintiffs' various claims, upon the Court's request, counsel for Plaintiffs explained and summarized at oral argument on September 20, 1991 the claim at issue in each of Plaintiffs' thirteen counts. The following is the Court's assessment of counsel's account of each count:

In count one, W. Gene Blakey as the personal representative of the estate of Walter Scot Blakey asserts a claim for wrongful death pursuant to the Death on the High Seas Act.

In count two, the personal representative of the estate asserts a claim for wrongful death pursuant to the Public Vessels Act.

In count three, the personal representative of the estate asserts a claim for wrongful death pursuant to general maritime law.

In count four, the personal representative of the estate asserts a claim for wrongful death pursuant to the Jones Act.

In count five, Plaintiffs (the exact identity of which plaintiffs remains unclear) assert a claim for wrongful death on the theory of products liability pursuant to the FTCA.

In count six, W. Gene Blakey, individually, asserts a derivative claim for the negligent infliction of emotional distress pursuant to the FTCA based on his familial relationship with his son, decedent Walter Scot Blakey. This claim arises out of alleged negligence by the Department of the Navy.

In count seven, W. Gene Blakey, individually, asserts a derivative claim for wrongful death pursuant to the Jones Act.

In count eight, W. Gene Blakey, individually, asserts a derivative claim for wrongful death pursuant to the Death on the High Seas Act.

In count nine, W. Gene Blakey (in which capacity remains unclear) asserts a claim for wrongful death pursuant to general common law of admiralty. Also, W. Gene Blakey, individually, reiterates his claim for negligent infliction of emotional distress pursuant to the FTCA.

In count ten, Mary Lou Blakey asserts a claim for negligent infliction of emotional distress pursuant to the FTCA arising out

of alleged negligence by the Department of the Navy.

In count eleven, Mary Lou Blakey asserts a derivative claim for wrongful death pursuant to the Jones Act due to the Defendants' alleged negligence.

In count twelve, Mary Lou Blakey asserts a claim for wrongful death pursuant to the Death on the High Seas Act.

In count thirteen, Mary Lou Blakey asserts a direct claim for wrongful death pursuant to the general common law of admiralty.

Because the Court dismisses all of Plaintiffs' claims for lack of subject matter jurisdiction, this Court does not find it necessary to specifically find whether Plaintiffs did or did not properly allege claims against the proper defendants or by the proper plaintiffs under the various authorities cited.[1]

## FACTS

On April 19, 1989, the crew of the U.S.S. IOWA was engaged in training exercises approximately 300 miles off of the coast of Puerto Rico. During these training exercises, there was an explosion in Turret II, killing 47 active duty members of the Navy, including Walter Scot Blakey. Seaman Walter Scot Blakey was on active duty in the United States Navy and was assigned to the U.S.S. IOWA as Petty Officer and Gunnery. No one is contesting that Walter Scot Blakey was killed in the line of duty and as a result his estate is eligible for benefits and entitlements from the Navy compensation system. Decedent Walter Scot Blakey had no dependents. His estate, as well as his parents individually, are hereby seeking monetary damages in tort which would be in addition to the compensation provided by the Navy.

An internal investigation of the explosion was conducted by the Department of the Navy. The convening authority, Admiral Donnell, appointed an investigator, Admiral Milligan, to perform an administrative investigation. Admiral Donnell originally thought that the explosion was caused by an accident.

Admiral Milligan ordered a clean up of Turret II. Admiral Milligan did not initially find it necessary to give information about the explosion to the Naval Investigative Service ("NIS") or call for a criminal investigation.

A few weeks after his administrative investigation began, the admiral recommended that the NIS conduct a criminal investigation. He had learned that a sailor on the U.S.S. IOWA who survived the explosion was a beneficiary of an insurance policy on the life of a sailor who died in the explosion.

The NIS investigated the situation surrounding the particular sailor who died in the explosion (not decedent Blakey) and had listed another sailor assigned to the U.S.S. IOWA (also not decedent Blakey) as the beneficiary on his life insurance policy. The Department of the Navy subsequently concluded that there was evidence that the sailor whose life had been insured had intentionally caused the explosion. This theory of an intentional explosion in no way implicated decedent Walter Scot Blakey. At no time in the course of investigating the explosion did the Department of the Navy allege or insinuate that Walter Scot Blakey was in any way to blame for the explosion.

The General Accounting Office requested that an independent investigation lab conduct tests on the evidence from the explosion. The independent investigation lab found that the explosion could have been caused by an inexperienced rammerman who may have overrammed the propellant in a 16–inch gun in Turret II. The lab also found that some evidence did not support the theory of an intentional explosion.

The Investigations Subcommittee and the Defense Policy Panel of the Committee on Armed Services of the House of Represent-

---

1. Obviously, some counts are not alleged properly or may not be alleged under the authority cited. For example, under the Public Vessels Act, 46 U.S.C.App. § 781 *et seq.*, even were there a cause of action, Plaintiffs may sue only the United States for maritime torts in admiralty, and may not sue the U.S.S. IOWA or the Department of the Navy.

atives studied the Department of the Navy's investigation into the explosion and issued a report criticizing the investigation. *See* House Comm. on Armed Services, Investigations Subcomm. and Defense Policy Panel, 101st Cong., 2d Sess., U.S.S. IOWA Tragedy: An Investigative Failure (Comm. Print 7) (1990). The report criticized, among other actions, the Navy's initial appointment of a one-officer investigation and the handling and evaluation of the evidence from the explosion site.

The Department of the Navy's final report as to the cause of the explosion was released on October 17, 1991, after oral argument of this case. On October 17, 1991, Plaintiffs received a communication from the Navy stating that "the opinion that the explosion resulted from a wrongful intentional act is disapproved. The exact cause of the explosion is unknown."[2]

## DISCUSSION OF LAW

### FERES DOCTRINE BARS CLAIMS ARISING OUT OF DECEDENT'S DEATH IN THE EXPLOSION

Plaintiffs allege that a component of the ammunition assembly used in the 16–inch gun on Turret II caused the explosion and that the firing of the gun was pursuant to unauthorized and illegal firing tests. The 16–inch gun had purportedly been loaded with ammunition assemblies that were not authorized for that particular type of gun. Plaintiffs allege that the ammunition assemblies used in these allegedly unauthorized gun discharges were prohibited by the warning printed on the powder cans. Thus, Plaintiffs contend, the discharges

were contrary to Navy policy which requires naval guns to be fired only with ammunition assemblies that are authorized for use in that particular gun. Plaintiffs assert that such unauthorized military activity is not the kind of military activity that the *Feres* doctrine was meant to protect.

Defendants assert that this Court lacks jurisdiction over Plaintiffs' claims arising out of decedent's death because the *Feres* doctrine bars Plaintiffs' claims. Defendants contend that these claims are barred because the actions were incident to military service and therefore this is a classic instance in which the *Feres* doctrine applies.

Plaintiffs contend that their claims arising out of the explosion are not barred by the *Feres* doctrine but also request that if this Court were to find the claims barred on the grounds that the acts leading to the explosion were incident to military service, that this Court create an exception to the *Feres* doctrine. Plaintiffs state that the *Feres* doctrine was never articulated by Congress, but rather was a judicial interpretation of the FTCA, and request that the Court reinterpret the FTCA without regard to the *Feres* doctrine.[3]

■ In *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court held that claims against the United States for injuries to servicemen that are incident to military activity could not be brought under the FTCA and are barred. The *Feres* doctrine has been reaffirmed several times and is well-settled.[4] The Supreme Court recently reaffirmed the

---

**2.** Plaintiffs sent a copy of the communication ("Comnavseasys Com letter 8030 00/MRN SER 00/0101091"), which was dated October 11, 1991, to this Court and asked that the Court consider it when ruling on the motion for summary disposition. Plaintiffs noted that in that letter, the Navy acknowledged that it did not use the more formal form of investigation that was available to it.

**3.** Plaintiffs suggested that the Court read the law review note, Note, "From *Feres* to *Stencel:* Should Military Personnel Have Access to FTCA Recovery?" 77 Mich.L.Rev. 1099 (Apr.1979). This note contends that the application of the statutory exceptions to the FTCA is sufficient to

safeguard the viable policies underlying the *Feres* doctrine while not barring as many claims as the *Feres* doctrine.

**4.** The Fourth Circuit has also recently followed the precedent of the *Feres* doctrine in *Appelhans v. United States*, 877 F.2d 309, 311 (4th Cir. 1989).

The *Feres* doctrine applies to claims of family members that are derivative to the service member's cause of action. *Kendrick v. United States*, 877 F.2d ⸳01, 1207 (4th Cir.1989), *cert. dismissed*, 493 U.S. 1065, 110 S.Ct. 1104, 107 L.Ed.2d 1013 (1990).

use of the *Feres* doctrine in military matters in *United States v. Johnson*, 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987). This Court will not disregard this precedent.

In *Johnson*, the Supreme Court stated three reasons for barring claims by service members arising from injuries incident to service. One justification for the *Feres* doctrine is that the federal nature of the relationship between the government and members of the armed services requires a uniform federal remedy that does not vary upon the situs of the incident. *Id.* at 689, 107 S.Ct. at 2068.

A second justification is the desire to avoid judicial involvement in the military which has a federal relationship with its members grounded in discipline and compliance with orders. *Id.* at 690–91, 107 S.Ct. at 2069; *see also Feres*, 340 U.S. at 143, 71 S.Ct. at 158. Plaintiffs allege that this goal is not applicable in cases in which the military activity is unauthorized. However, as stated in *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), the *Feres* doctrine protects against litigation involving "second-guessing military orders" and testimony by persons in the armed forces "as to each other's decisions and actions." *Id.* at 673, 97 S.Ct. at 2059. Such concerns are present in the case *sub judice*.

The third justification for the *Feres* doctrine is also applicable in this case. The *Johnson* and *Feres* Courts found that the FTCA does not permit suits against the government by military personnel for claims incident to military service because Congress had already provided for "systems of simple, certain and uniform compensation for injuries or death of those in armed services." 481 U.S. at 689, 107 S.Ct. at 2068; 340 U.S. at 144, 71 S.Ct. at 158.

The *Johnson* Court described these compensation systems as "generous." 481 U.S. at 689, 107 S.Ct. at 2068. The systems are efficient and "normally require[ ] no litigation." *Feres*, 340 U.S. at 145, 71 S.Ct. at 159. Beyond compensation, a scheme such as the Veterans' Benefits Act[5] also serves the purpose of limiting the liability of the federal government. *See Stencel*, 431 U.S. at 673, 97 S.Ct. at 2058. It is uncontested that Walter Scot Blakey's estate is eligible under the Navy compensation scheme. Moreover, whether the explosion was caused by an intentional act of another or by an accident does not affect the Navy's finding that decedent died in the line of duty and that his estate is eligible for the appropriate veterans' compensation.

■ This Court finds that at the time of the explosion, Walter Scot Blakey was involved in activity incident to military service. He was on active duty, serving on a military ship involved in training exercises off the coast of Puerto Rico. This is a classic instance in which to invoke the *Feres* doctrine. This Court finds that the *Feres* doctrine bars each of the causes of action Plaintiffs assert arising out of decedent's death by virtue of the explosion.

## THE DISCRETIONARY FUNCTION EXCEPTION TO THE FTCA BARS CLAIMS ARISING OUT OF THE DEPARTMENT OF THE NAVY'S INVESTIGATION

Decedent's parents are seeking damages for emotional distress which they contend was caused by the Navy's alleged negligence during its internal investigation which at one point arrived at the theory that decedent's death was likely a result of another's intentional act.[6] Defendants assert that the investigation is within the discretionary function exception to the Fed-

5. 38 U.S.C. § 301 *et seq.*

6. Plaintiffs asserted at oral argument that the emotional distress was caused by first being told that their son had been killed, then told he was killed as a result of what the Navy thought was an intentional explosion, and then told that the Navy did not know the cause of the explosion. Because this Court finds that it has no subject

matter jurisdiction due to the discretionary function exception to the FTCA, this Court does not find it necessary to determine whether there would otherwise be a cognizable claim. By discussing this matter, this Court in no way recognizes that any such claim exists even were it a non-discretionary function.

eral Tort Claims Act and therefore these claims are barred for lack of subject matter jurisdiction. Plaintiffs assert that the claims for emotional distress alleged under the FTCA are not barred by the discretionary function exception to the FTCA.

The FTCA is a limited waiver by the United States of its sovereign immunity. There are several exceptions to this waiver, and the one at issue in this case is the discretionary function exception to the jurisdictional grant of the FTCA. The statutory discretionary function exception provides that there is no liability for:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

As stated in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the discretionary function exception bars all claims based on discretionary acts regardless of whether the acts were negligently performed or an abuse of discretion. *Id.* at 32–34, 73 S.Ct. at 966–67. Thus, the issues before this Court are whether the Navy had the authority to act in its discretion, and if so, whether the Navy's action or inaction, regardless of any existence of negligence, was the type of action Con-

gress intended the discretionary function exception to protect.

The cases that Plaintiffs submitted to the Court concerning government liability for negligence [7] are not applicable to the facts of this case. In those cases, defendants engendered reliance by the plaintiffs or the plaintiffs justifiably relied on defendants' actions. In contrast, the Navy's investigation was not for the benefit of Plaintiffs nor did it affect Plaintiffs' safety.

■ Plaintiffs asserted at oral argument that the Navy had a duty to conduct the internal investigation.[8] This Court finds that the Department of the Navy owed no duty to Plaintiffs to conduct the internal investigation into the cause of the explosion. The only investigatory obligation the Navy owed to the Plaintiffs was to determine whether the decedent's death was within the line of duty. The Department of the Navy did fulfill its duty by determining that the death was within the line of duty and, therefore, that his heirs and estate qualified for the benefits.

■ There is a two-part inquiry for matters involving alleged discretionary functions: (1) whether the conduct involved judgment or choice and (2) whether the conduct depended on public policy considerations. *See Piechowicz v. United States*, 885 F.2d 1207, 1211–13 (4th Cir.1989) (interpreting *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). A discretionary function is one "in which a government official must deter-

**7.** *Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983) (Good samaritan duty by government owed to plaintiff who relied on Farmers Home Administration officer); *Park v. United States,* 517 F.Supp. 970 (D.C.Or.1981) (Farmers Home Administration officer liable for negligence); *Loritts v. United States,* 489 F.Supp. 1030 (D.C.Mass.1980) (Government liable where invitee without an escort was raped at West Point by cadet where school had undertaken to provide escorts).

**8.** Plaintiffs cite *Vogelaar v. United States,* 665 F.Supp. 1295 (E.D.Mich.1987). In *Vogelaar,* the court found that the claim of a mother of a serviceman who died in Vietnam was not barred by sovereign immunity where she was suing for the alleged failure to timely identify

her son's remains. The mother also sued for emotional distress due to the government's improper and incorrect identification of her son as a deserter. The court found that the mother's claim alleging a failure to properly investigate her son's disappearance and classifying him as a deserter was barred under the foreign country exception to the FTCA.

It should be noted that although the mother did not sue for monetary injuries resulting from the downward effect the misclassification might have on compensation for her son's death, it is likely that she suffered a loss of appropriate compensation. However, compensation for the death of Walter Scot Blakey, who, it is uncontested, died in the line of duty, is not dependent on the cause of the explosion.

mine what action to take based upon a case-by-case analysis of relevant factors and in which his decision includes elements of judgment and discretion." *Kline v. Republic of El Salvador,* 603 F.Supp. 1313, 1317 (D.C.1985) (citing *Dalehite*). The discretionary function exception bars claims involving a matter of choice or judgment which is "of the kind that the discretionary function exception was designed to shield." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1959. The Supreme Court stated in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), that the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions exercising policy judgment through the medium of tort actions. *Id.* at 814, 104 S.Ct. at 2765.

As stated by the Fourth Circuit, "The threshold inquiry is whether the challenged conduct 'involves an element of judgment or choice.'" *Piechowicz,* 885 F.2d at 1211 (citing *Dalehite*). Plaintiffs assert that the Navy did not conduct its investigation pursuant to the Manual of the Judge Advocate General ("JAG Manual") and a Secretary of the Navy Instruction. The Department of the Navy asserts that its officials acted pursuant to discretion allowed by the relevant manual and policy.

█ Under the Manual of the Judge Advocate General, the Navy may assign a one-officer investigative body to perform an administrative inquiry, which Admiral Donnell did. *See* Manual of the Judge Advocate General, Chapters II and V.[9] This Court finds that Admiral Donnell's choice of a one-man investigation rather than a larger, more formal investigation was permitted by the JAG Manual.

Plaintiffs contend that the Navy was negligent in failing to immediately call for a criminal investigation by the Naval Investigative Service. In support of this argument, Plaintiffs cite a statement in a House of Representative committee report which states that the Navy violated Navy policy guidance by not immediately requesting a criminal investigation by the Naval Investigative Service. *See* House Comm. on Armed Services, Investigations Subcomm. and Defense Policy Panel, 101st Cong., 2d Sess., U.S.S. IOWA Tragedy: An Investigative Failure (Comm. Print 7) (1990), at 25. The policy guidance referred to is Secretary of the Navy Instruction (SECNAVINST) 5520.3. Plaintiffs assert that the Navy did not follow SECNAVINST 5520.3 and that this instruction does not grant discretion to the Navy or its officials.

Secretary of the Navy Instruction (SECNAVINST) 5520.3 states in pertinent part:

(3) In addition to referral of major criminal offenses, when any of the following circumstances occur, command shall

---

**9.** In Chapter II, entitled "Administrative Fact-Finding Bodies—Generally," the Manual states in a section regarding the selection of the type of fact-finding body:

The several types of fact-finding bodies as described in the preceding section are prescribed to accommodate the variety of situations which require investigation in the naval service. Thus, selection of the type of fact-finding body in a specific instance should be largely determined by such factors as the powers which the fact-finding body will require, the paramount purpose of the inquiry, the relative seriousness of the subject of the inquiry, the probable complexity of the factual issues involved, the time allotted for completion of the inquiry, and other such matters. Much must be left to the judgment and discretion of officers in command. In general, however, the following guidelines should be considered in selecting the type of fact-finding body. When the incident under investigation involves substantial loss of life or when significant international or legal consequences may be involved, either a court of inquiry or a board of investigation required to conduct a hearing, depending generally upon whether the power to subpoena civilian witnesses is involved, should be considered. Other serious incidents requiring investigation, such as grounding of a ship, collision, flooding, and other major afloat casualties, particularly if significant loss of life resulted, should ordinarily be investigated by a board or single officer individual investigation required to conduct a hearing, but in such cases the requirement of a verbatim record need not invariably be imposed. In other less serious cases a fact-finding body not required to conduct a hearing will ordinarily be adequate. In any case in which there is doubt as to the type of fact-finding body which should be ordered, the matter may be referred to a superior in command for determination.

promptly provide available information to the NIS for preliminary inquiry to determine if a request for a full investigation is warranted:

(a) Unattended death of military personnel ... occurring on a Navy ... installation when criminal activity cannot be firmly excluded.

(b) Any fire or explosion of questionable origin affecting the Department of the Navy ... property or property under Navy ... control.

This Court finds that SECNAVINST 5520.3, which states that command should promptly provide information to the NIS when there is an unattended death on a naval installation in which criminal activity cannot be firmly excluded or when there is an explosion of questionable origin on naval property, allows Navy officials discretion to determine whether criminal activity can be firmly excluded and/or whether an explosion was of questionable origin. The determination that criminal activity was involved or an explosion was of questionable origin is a subjective determination which must be made before the instruction to provide information to NIS applies. This Court finds that it was pursuant to the Navy's discretion to proceed immediately after the explosion under an initial understanding that the explosion was accidental, and as a consequence, the Navy was not required to immediately call for an investigation by the NIS. An initial subjective determination of such facts surrounding the explosion involves the exercise of judgment which this Court finds is the kind of judgment that the discretionary function exception was intended to protect.

Courts have held, upon review of a relevant statutory scheme, that the discretionary function exception may apply to the manner in which a governmental entity chooses to investigate. *See General Pub. Util. Corp. v. United States*, 745 F.2d 239 (3d Cir.1984), *cert. denied*, 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985) (discretionary function exception bars claim that Nuclear Regulatory Commission did not investigate prior occurrence well enough to prevent similar occurrence). *See also Patterson v. United States*, 881 F.2d 127 (4th Cir.1989) (discretionary function exception bars claim based on investigation that determined there was no emergency and therefore funds for emergencies would not be expended).

Plaintiffs cite *Kohn v. United States*, 680 F.2d 922 (2d Cir.1982), *on remand*, 591 F.Supp. 568 (E.D.N.Y.1984), in support of their claim that they can sue for the Navy's alleged negligence. However, the major issue in *Kohn* was whether the *Feres* doctrine barred plaintiffs' claims, and only in passing was the discretionary function exception discussed.[10] In that case, a soldier was fatally shot by a fellow soldier while in the Army. The plaintiffs in *Kohn* alleged, among a host of other claims and facts,[11] that the government's communication of inaccurate and misleading information to the family resulted in the intentional, malicious and needless infliction of emotional distress. *Id.* at 924. The appellate court found that the various claims concerning post-accident action were not barred by the *Feres* doctrine.

The appellate court also found that the discretionary function exception did not "plainly bar" claims arising out of the Army's alleged mistreatment of the family after the death. *Id.* at 927. On remand, the district court found that the Army's

---

0205(a) JAG Manual, Change 6.

**10.** Although Defendants did not contend that the *Feres* doctrine barred claims arising out of the Navy's investigation, Plaintiffs addressed this issue.

**11.** In *Kohn*,

the plaintiffs ask[ed] for damages for emotional distress allegedly caused by the following acts of the Army: performing an unauthorized autopsy, failing to return organs to the body for burial, embalming the body, and cremating missing organs, all in violation of plaintiffs' deep religious beliefs as members of the Jewish faith; communicating inaccurate and misleading information about the circumstances of the death; failing to provide an honor guard at the burial; losing or destroying certain of [decedent's] personal effects; mailing Army recruitment literature to the Kohn family home; and mailing pictures of the autopsy to plaintiffs instead of to their attorney, as they requested.

591 F.Supp. at 571.

treatment of the family and handling of the body did not involve policy judgments that advanced important governmental purposes, and thus the discretionary function exception did not apply. 591 F.Supp. at 571.

The facts of the *Kohn* case involving mistreatment of the decedent's family are distinguishable from the present case.[12] In this case, the Navy had discretion to determine whether the criteria requiring a criminal investigation were satisfied. Moreover, the manner in which the Navy conducted its internal investigation into the cause of the explosion on the U.S.S. IOWA was of the type presumed to be grounded in policy judgments.

In the Supreme Court's recent case on the discretionary function exception, *United States v. Gaubert*, —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Court stated the following standard to be utilized by a court reviewing a claim based on a regulation which a court finds allows discretion:

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising discretion. *For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.* The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Id.* 111 S.Ct. at 1274–75 (emphasis added). Plaintiffs have not alleged that the Department of the Navy's actions or inactions during the investigation were not grounded in the policy of the Department of the Navy.

Because the Navy's actions or inactions were a matter of choice and discretion, and therefore are presumed to involve policy considerations, this Court finds it has no subject matter jurisdiction, and thus this Court grants Defendants' motion to dismiss.

### CONCLUSION

Plaintiffs' claims arising out of the decedent's death by virtue of the explosion are barred by the *Feres* doctrine. Plaintiffs' claims arising out of the Department of the Navy's investigation of the explosion which caused decedent's death are barred by the discretionary function exception to the Federal Tort Claims Act.

Defendants' motion to dismiss all of Plaintiffs' claims due to lack of subject matter jurisdiction is GRANTED and this case is DISMISSED.

IT IS SO ORDERED.

---

**12.** Moreover, the *Kohn* case is dated, having come at or before the time of major Supreme

Court decisions on the discretionary function exception, such as *Varig* and *Berkovitz.*